**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**FALCON STEEL, INC.** **PLAINTIFF**

**v.** **CIVIL NO. 09-2007**

**J. RUSSELL FLOWERS, INC., ET AL** **DEFENDANTS**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before this Court is Plaintiff's, Falcon Steel, Inc, (hereinafter "Falcon"), Motion for Temporary Restraining Order to Enjoin the Transfer of the barges by Separate Defendant J. Russell Flowers, Inc. (hereinafter "Flowers") during the pendency of the lawsuit filed on August 6, 2009. (Doc. # 35). This motion was referred to the undersigned on August 7, 2009. (Doc. # 37). Separate Defendants Flowers and US Technology Marine Services, LLC (hereinafter "USTM") filed responses on August 17, 2009, and August 31, 2009, respectively. (Doc. # 41 and 46).

**I. Statement of Facts:**

Falcon states the above action is for the foreclosure of Falcon's perfected materialman's lien against eight (8) barges in varying stages of completion that were being constructed by USTM for Flowers. (Doc. # 2). Falcon states sometime between January and February, 2008, USTM contacted Falcon to inquire about purchasing steel from Falcon for the construction of eight (8) barges to be purchased by Flowers upon their completion (hereinafter the "Project"). (Doc. # 2, p. 2).

In connection with this inquiry, USTM provided Falcon with a specification sheet showing the dimensions and number of pieces of the steel parts of the barges. (Doc. #2, Exhibit A).

On or about February 1, 2008, USTM signed a credit application in connection with the provision of steel for the Project. (Doc. #2, Exhibit B). Falcon thereafter provided steel to USTM for the Project on credit and USTM agreed to purchase steel from Falcon on credit for the Project.

Beginning on or about February 6, 2008, USTM began sending purchase requisition/orders to Falcon for various steel purchasing requirements and Falcon shipped the steel to USTM for use in the Project. (Doc. #2, Exhibit C).

On or about April 30, 2008, Separate Defendant, JP Morgan Chase Bank, N.A., filed a UCC Financing Statement that it filed in Arkansas. (Doc. #35, Exhibit B).

On August 29, 2008, Falcon made its last delivery of steel to USTM for the Project. (Doc. 2, Exhibit D). Including the cost of this last shipment, the total balance due to Falcon from USTM for the steel supplied for the Project was $476,659.82.

The balance remained unpaid, so on September 15, 2008, Falcon sent a 75-day and 10-day notice of intent to file a lien on the barges, pursuant to Arkansas Code Annotated § 18-44-101 *et seq*. (Doc. #2, Exhibit D).

On December 10, 2008, the balance remained unpaid so Falcon filed its Accountant of Materialman's Lien with the Sebastian County Clerk and Recorder. (Doc. #2, Exhibit D).

USTM is insolvent. (Doc. #2, p.3). USTM advised Falcon that USTM closed its doors and laid off its employees.

On December 30, 2008, Flowers attempted to perfect its security interest in the barges by filing a UCC Financing Statement with the State of Arkansas. (Doc. 35, Exhibit A).

At some point in January of 2009, Flowers paid Falcon $100,000.00 to release its lien claim on one of the barges that had been completed in December 2008. (Doc. 35, p.3; Doc. # 28, Exhibits 2 and 3).

Falcon states the remaining pieces of the barges are located at USTM's operating facility near Fort Smith, Arkansas. Falcon states it received information that Flowers has hired a third party to construct or finish constructing the remaining barges at issue so that they will be seaworthy and capable of navigation. (Doc. 35, p.4).

A hearing on the motion was held on September 11, 2009. Falcon introduced Exhibits numbered 1-16 and Mr. Jackie Swain and Mr. Terry Heinz testified on behalf of Falcon. Defendant USTM introduced exhibits A and B and Mr. Jeff Cluck testified on behalf of USTM. Counsel for Separate Defendant Flowers was present as was counsel for Intervenor Plaintiff Rogers Industrial, Inc. Ms. Amanda Thomas was present representing Rogers Industrial Supply Corporation.

**II. Discussion:**

Rule 65 of the Federal Rules of Civil Procedures governs the issuance of temporary restraining orders and preliminary injunctions. In deciding a motion for a temporary restraining order or a preliminary injunction, the courts are instructed to consider what have come to be known as the *Dataphase* factors: (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). *See also Minnesota Mining and Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1307 (8th Cir.1997); *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir.1993). No

single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction. *See Sanborn*, 997 F.2d at 486; *Calvin Klein Cosmetics Corp. v. Lenox Lab., Inc.*, 815 F.2d 500, 503 (8th Cir.1987). The burden of establishing the necessity of a temporary restraining order is on the movant. *Baker Electric Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

With the applicable standard in mind, we turn to an examination of the first factor whether Plaintiff has established a likelihood of success on the merits. Falcon contends it is likely to succeed on the merits because Flowers never perfected its security interest, but Falcon has perfected its materialman's lien on the barges in question. (Doc. 2, p. 22). Defendants argue Falcon does not have a valid materialman's lien as Falcon did not file within the 120 days required and cannot show where it's steel was used.

Plaintiff "is not required to prove a mathematical (greater than fifty percent) probability of success on the merits." *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003). Rather, it is a question of whether plaintiff has a "fair chance of prevailing" after discovery and a full trial. *Id. citing Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing.").

Arkansas Code Annotated section 18-44-101 states:

> a) Every contractor, subcontractor, or material supplier as defined in § 18-44-107 who supplies labor, services, material, fixtures, engines, boilers, or machinery in the construction or repair of an improvement to real estate, or any boat or vessel of any kind, by virtue of a contract with the owner, proprietor, contractor, or subcontractor,

> or agent thereof, upon complying with the provisions of this subchapter, shall have, to secure payment, a lien upon the improvement and on up to one (1) acre of land upon which the improvement is situated, or to the extent of any number of acres of land upon which work has been done or improvements erected or repaired.
>
> (b) If the improvement is to any boat or vessel, then the lien shall be upon the boat or vessel to secure the payment for labor done or materials, fixtures, engines, boilers, or machinery furnished.

A.C.A. § 18-44-101.

Pursuant to Arkansas Code Annotated section 18-44-110, for purposes of priority over other creditors, a materialman's lien is considered to relate back to the date on which the particular material was furnished. Ark.Code Ann. § 18-44-110(a)(1) (Repl.2003). According to Arkansas Code Annotated section 18-44-117(a)(1) (Supp.2007), a materialman has 120 days after materials are last furnished to perfect his or her lien by either filing a lawsuit or filing notice of the lien with the clerk of the circuit court of the county in which the property subject to the lien is situated. *National Home Centers, Inc. v. Coleman,* 373 Ark. 246, 253-254, 283 S.W.3d 218, 223-224 (2008)(citations omitted). The consistent rule has been to place the burden on the materialman to show that the materials for which he claims a lien were used in the improvement on which a lien was sought because the lien does not attach until the materials supplied are actually used and incorporated into the improvement. *Del Mack Const., Inc. v. Owens*, 82 Ark. App. 415, 419-420, 118 S.W.3d 581, 584 - 585 (2003). However, where materials purchased for an improvement are delivered by the materialman at or near where the improvement is to be erected or is being erected, and such improvement is actually completed of materials of the description of those furnished, this fact is prima facie evidence that such materials were used in its construction, and the burden is on the owner to show that they were not so used. *Stone Mill & Lumber Co. v. Finsterwalder,* 249 Ark. 363,

365-366, 459 S.W.2d 117, 118 - 119 (1970); *Half Moon Gin Co. v. E.C. Robinson Lumber Co.,* 207 Ark. 483, 484-485, 181 S.W.2d 239, 239 - 240 (1944).

In the present case, Falcon must prove that it filed it's materialman's lien within the 120 days as required by Arkansas Code Annotated section 18-44-117 and that the steel it provided was used in the barges now in question.

We will first address the 120 day requirement. As addressed above, the clock counting the 120 days starts on the date of the last delivery of material. Falcon argues it delivered it's last shipment of steel for the Project on August 29, 2008, and as such it's filing of an Accountant of Materialman's Lien with the Sebastian County Clerk and Recorder on December 10, 2008, fell within the 120 days requirement. Defendants Flowers and USTM argue the date that started the 120 day clock was the date of the last shipment of steel used in the remaining barges currently under construction (hereinafter barges "F3, F4, and F5") on or about May 2, 2008, therefore Falcon did not file on time.

At the hearing on September 11, 2009, Defendant USTM called Mr. Cluck, a former engineer for USTM and record keeper of the steel delivered. Mr. Cluck was the project engineer and testified with precise knowledge about the use to which the steel was put. The Plaintiff's case revolves around that last shipment of steel that was sent from Falcon to USTM on August 29, 2008 which involved 9 units of HR Plate 3/4" by 96" by 480". (See Plaintiff's Exhibit 8, last page). Mr. Cluck testified that this steel was received on September 5, 2008 and that the steel went into the F2 barge. Cluck testified that he kept detailed records in a log book and data entered into his lap top computer. He was required to account for the steel going into the barges because the contract provided for a base price and an adjustment for the fluctuation of steel above or below $825/ton. (See

Exhibit 1, p.1) Cluck testified that he ordered this steel and that he knew where this particular shipment of steel went because the 3/4 " steel was used in the upper decking and was one of the last items to go onto the barge. This barge (F2) left Fort Smith in December 2008 and sailed down the Arkansas River to points unknown. Flowers subsequently paid $100,000 to Falcon and the lien on this particular barge was release by agreement of the parties on January 5, 2009. (See Exhibit 13) The F1 barge was completed and shipped prior to December 2008 and is not subject to this litigation. The F3, F4 and F5 barges remain at the shipyard and are currently under construction.

According to Jack Swain, the general manager for Falcon, he was aware of the fact that USMT had a contract to build about 20 barges but he was not aware of the specifics of the contract. He was provided with the specifications of the barges (Plaintiff's Exhibit 3) and they did open a line of credit for USTM. (Plaintiff's Exhibit 4) Swain stated that Falcon had delivered a total of $998,201.63 in steel the USTM and had been paid, including the payment received by Falcon from Flowers of $100,000 for the release of F2, a total of $621,541.81.(See Plaintiff's Exhibit 8) Mr. Swain acknowledged that the last shipment of steel to USTM, prior to the August shipment, was on May 2, 2008. Mr. Swain also acknowledged that they were not the exclusive supplier of steel to USTM. Mr. Swain stated that when the order came in August for additional steel to USTM, since they were behind on the account, he did not ship the steel without the authorization of Mr. Heinz, the president of Falcon.

Mr. Heinz testified that because of the delinquent status of the account he required USTM to make a payment before shipment was delivered. The record shows that USTM did make a payment of $65,000 by wire transfer on August 28, 2008. (Plaintiff's Exhibit 8, p. 5) Mr. Heinz acknowledge that this payment was not directed to the August 29, 2008 invoice but to older outstanding invoices.

He was not sure exactly which ones. It is undisputed that USTM placed another order for steel before the 120 expired on the last shipment made by Falcon. It is also undisputed that USTM did not disclose upon which barge the last order of steel would be placed and that it never was the practice of USTM to disclose to Falcon what steel would be used for which barge.

The issue appears to be a legal one, being whether, under the facts of this case, the statutory 120 days runs from the date material was last supplied on an open account or does it run from the date the material was last used on the barge to which the lien can attach.

It does not appear that the Arkansas Supreme Court has ruled on this particular issue and the court cannot say that the time does not run from the last day goods are supplied on an open account even if those goods were not placed into the construction of the thing upon which the lien is asserted. Based on the evidence, for the purpose of the Temporary Restraining Order, the undersigned finds Falcon has a fair chance of prevailing in proving it met the 120 day requirement set out in A.C.A. § 18-44-117.

The next question is whether Falcon met it's burden in showing that the steel it provided to USTM at USTM's operating facility was used in the barges for which it now claims a lien. Defendants argue Falcon cannot meet this burden as it appears the steel provided by Falcon was commingled with steel provided by other suppliers thereby losing its identity and that the steel may have actually been used in improvements other than the barges, namely the fabrication shop, warehouse, etc. Mr. Cluck testified that his log shows the use of Falcon's steel in barges F3, F4, and F5, the only remaining barges at USTM operating facility near Fort Smith, Arkansas. Specifically, Defendant USTM's Hearing Exhibit B shows the following: 43% of Falcon's steel in invoice number 05554918, at a cost of $22,187.30, went into barges F3 and F4; 100% of Falcon's steel in invoice

number 0555467, at a cost of $14,079.59, went into barge F3; 100% of Falcon's steel in invoice number 0555298, at a cost of $28, 131.60, went into barges F3 and F4; and 100% of Falcon's steel in invoice number 0555466, at a cost of $28, 159.87, went into barges F4 and F5. Based on the records presented by Mr. Cluck and the evidence showing Falcon delivered the steel to USTM's operating facility for the use of the construction of the barges, the undersigned finds Falcon has a fair chance at prevailing on it's argument that $65,803.52 of it's steel was used in the construction of the remaining barges and Falcon would therefore be entitled to compensation for the percentage of its steel in barges F3, F4 and F5.

Falcon contends that since some of the steel it has supplied has been utilized in the barges it is entitled to a lien against all remaining barges for the remaining unpaid balance. It cites McCann v. Dyke, 187 Ark. 507 (1033) for this proposition but the court does not find McCann v. Dykes controlling. Besides being a case from 1933 the facts were that a single account was opened by the materialman for the construction of a single home and the court stated that while much of the material was used in "building a rock wall, a fish pond and a chicken house" it was all used to improve the land which has been charged with a lien.

In this case the steel was furnished for construction of mobile barges but not all of the steel furnished to USTM by Falcon went into the construction of barges or the construction of barges for Flowers. Mr. Cluck testified that he did order steel from a number of other suppliers, particularly when their credit with Falcon became tight. Mr. Cluck stated that none of the steel provided for the construction of the barges, whether supplied by Falcon or another supplier, contained any identifying marks and the only way he could tell who the material was from and what project it went on was because of the particular dimensions of the steel ordered.

Mr. Cluck also testified that USTM had to construct two large tables for the barges to sit on while work was being done. These tables were large enough to hold two barges each during construction and that there was about $625,000 in steel in the construction of these tables and the launch system.

Mr. Cluck also testified that USTM had a contract with Canal to build barges and that some of the Falcon steel went into the construction of the Canal table and barges. (See Defense Exhibit B) The Canal barges have been built and shipped and no incomplete canal barge remains on the USTM property. The materialman's lien statue specifically provides that "[I]f the improvement is to any boat or vessel, then the lien shall be upon the boat or vessel.."

While the Plaintiff cannot establish a lien for the entire remaining unpaid debt the evidence is undisputed that Falcon does have a lien in the amount of $65,803,52.

We turn to the question of whether plaintiff has shown a threat of irreparable harm if the temporary restraining order is not issued. Falcon states the transfer of the remaining barges will constitute irreparable and immediate loss, damage and harm to Falcon because the barges constitute Falcon's only recourse for recovering the money owed to it for the steel used in the construction of the barges. Falcon states USTM is insolvent and a judgment against USTM will be worthless. Clearly, the barges leaving the jurisdiction during the pendency of the lawsuit would harm Falcon should it prevail in it's lawsuit.

We now turn to the balance between this harm and the injury that granting the temporary restraining order will inflict on other interested parties. As the bench trial to determine the outcome of this lawsuit is set to occur in less than fifty days, the undersigned finds the harm to Defendants in restricting the transfer of the barges in question does not outweigh the harm that Falcon may

experience as a result in allowing the barges to leave this courts jurisdiction should it prevail on the merits. Restricting the transfer of the barges will in essence maintain the status quo during the pendency of this litigation.

Finally, we look to see whether the issuance of a temporary restraining order is in the public interest. Falcon contends issuing a temporary restraining order is in the public interest because it will safeguard Falcon's lawful and properly perfected materialman's lien in the barges and prevent Flowers from committing a possibly illegal or criminal act. The court finds there is a public interest in having confidence in making businesses purchases and transactions and the enforcement of the rights of materialmen.

## III. Conclusion:

After carefully reviewing the entire record, the undersigned recommends Falcon's Motion for a Temporary Restraining Order to Enjoin the Transfer of the barges be GRANTED. It is further recommended that as the moving party, Falcon, post bond in the amount of $75,000.00 as required by Rule 65. FED.R.CIV.PROC. 65 (c). **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of September 2009.

/s/ J. Marschewski
JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE