IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

FALCON STEEL, INC.                                    PLAINTIFF

          v.          Civil No. 09-2007

J. RUSSELL FLOWERS, INC.;
US TECHNOLOGY MARINE SERVICES, LLC;
and JP MORGAN CHASE BANK, N.A.                        DEFENDANTS

          and

ROGERS INDUSTRIAL, INC.                               INTERVENOR

### O R D E R

     Now  on  this  22nd  day  of  October,  2009,  come  on  for
consideration the following:

     *   plaintiff's **Motion For Temporary Restraining Order To
Enjoin The Transfer Of The Barges During The Pendency Of The
Lawsuit** (document #35);

     *   the  **Magistrate  Judge's  Report  And  Recommendation**
(document #50);

     *   **Plaintiff's Objections To Magistrate Judge's Report And
Recommendations** (document #51);

     *   **Defendant's Objections To Magistrate Judge's Report And
Recommendation And Defendant's Response To Plaintiff's Objections**
(document #55); and

     *   plaintiff's **Motion To Strike Defendant's Objections To
Magistrate  Judge's  Report  And  Recommendation  And  Defendant's
Response To Plaintiff's Objections** (document #56),

and the Court, being well and sufficiently advised, finds and orders as follows:

1.   Plaintiff Falcon Steel, Inc. ("Falcon") alleges that it supplied steel to defendant US Technology Marine Services, LLC ("UST") for the construction of eight barges to be purchased by J. Russell Flowers, Inc. ("Flowers").  Falcon further alleges that the purchase price of the steel remains unpaid, and that it has perfected a lien for the money owed.

The Complaint prays for judgment *in rem* against the eight barges, which are alleged to be in various stages of completion; for judgment *in personam* against UST for the unpaid balance on the purchase price of the steel; for foreclosure of the lien; and for an injunction against the removal or transfer of the barges.

2.   Flowers answered, denying the material allegations of the Complaint and counterclaiming against Falcon, seeking a declaration that it has a lien against the barges that is superior to that of Falcon.

UST answered, denying the material allegations of the Complaint.

JP Morgan Chase Bank N.A. ("Chase Bank") answered and asserted that its interest in the barges is superior to that of Falcon, UST, and Flowers.

Rogers Industrial, Inc. ("Rogers Industrial") intervened to assert liens that it claims are superior to all other potential

claims.

3.  On June 23, 2009, Falcon moved for a temporary restraining order, alleging that Flowers had given notice of intent to sell some of the barges.  This motion was referred to United States Magistrate Judge James R. Marschewski, who recommended that the motion be denied for failure to post bond, but directed that Flowers give notice of any future attempts to sell the barges.  There were no objections, and Court adopted the Magistrate Judge's Report And Recommendation.

4.  On August 6, 2009, Falcon again moved for a temporary restraining order, alleging that it had information that Flowers had hired a third party to complete the barges so they could be moved out of the Court's jurisdiction.  Falcon sought to enjoin movement of the barges.

This motion was also referred to Magistrate Judge Marschewski.  Following an evidentiary hearing, Magistrate Judge Marschewski issued the Magistrate Judge's Report And Recommendation ("R&R") now under consideration.  He reported as follows, with regard to the four elements considered relevant to the issuance of temporary injunctive relief according to **Dataphase Systems, Inc. v. CL Systems, Inc.**, **640 F.2d 109 (8th Cir. 1981)**:

*  Falcon has a fair chance of prevailing in proving that it met the 120-day requirement for filing a materialman's lien under **A.C.A. § 18-44-117;**

* Falcon has a fair chance at prevailing in proving that $65,803.52 of its steel was used in the construction of the barges;

* Falcon will suffer irreparable harm if the barges leave the jurisdiction of this Court during the pendency of this lawsuit;

* the balance of harms favors Falcon; and

* temporary injunctive relief is in the public interest because it will create confidence in business transactions and the enforcement of materialmen's liens.

Based on the foregoing, Magistrate Judge Marschewski recommended that Falcon's second motion for temporary restraining order be granted, conditioned upon Falcon posting a bond of $75,000.

5. Falcon objects to the factual determination of the amount of its lien, contending that it was not necessary to determine the amount in order to determine whether preliminary injunctive relief is appropriate. Falcon takes the position that it need only prove that it had a fair chance of proving the existence of a lien.

In addition, Falcon objects that its lien covers all the remaining barges, and covers the balance of the unpaid debt.

UST objects to the factual determination that Falcon perfected its lien. It further objects to the balance of harm

-4-

determination, stating that each barge is worth approximately
$750,000, and the lien -- if it exists -- is for only $65,803.52.
It contends that $3,000,000 worth of property is being tied up to
secure $65,803.52 worth of [contested] debt, and that "restricting
transfer of the barges at such a crucial time will ultimately lead
to a shut down of the shipyard."

6.   Falcon moved to strike UST's Objections, contending that
they were untimely filed, in that objections to the R&R were due
on October 1, 2009, but were not filed until October 5, 2009.
This argument is without merit.

The R&R was filed on September 17, 2009. Excluding the 17th,
as required by **F.R.C.P. 6(a)(1)**; excluding intervening Saturdays
and Sundays, as required by **F.R.C.P. 6(a)(2)**; and adding three
days after the period would otherwise expire, as required by
**F.R.C.P. 6d)**, objections to the R&R were due on October 4, 2009.
That being a Sunday, filing on Monday, October 5, 2009, was timely
under **F.R.C.P. 6(a)(3)**. Falcon's Motion To Strike will,
therefore, be denied.

7.   Falcon objects to the Magistrate Judge's factual
determination of the amount of the lien, contending that the lien
covers all the barges and includes the entire debt owed to it. It
is Falcon's position that all the barges are impressed with the
lien for the entire unpaid balance of the debt because the barges
are parts of a multi-part project and the materials were provided

-5-

under a single contract.

Falcon relies primarily on **McCann v. Dyke**, **187 Ark. 507, 60 S.W.2d 918 (1933)**.  In that case, the court affirmed a lien upon land for the cost of materials used in building a residence, a rock wall, a fish pond, and a chicken house, reasoning that the materials were all used to improve the land and were furnished under one contract.  That reasoning is inapposite to materials furnished under one contract but used in separate vessels, as opposed to separate improvements to a single parcel of land.

More to the point is **Powell v. Baker Ice Machine Co.**, **8 F.2d 125 (8th Cir. 1925)** (decision under Arkansas law), where separate orders were made by Moody Engineering Company to Baker Ice Machine Company for ice production machinery to be delivered to and installed in separate plants on separate parcels of land owned by Powell.  The court there affirmed a lien upon both parcels for the total price of the machinery, saying

> [t]he only controversy of merit on this appeal is whether appellee was entitled to a lien for the whole debt on both plants as an entirety, rather than separately on each plant for the equipment that went into each. Counsel for appellants concede that under the decisions of the Supreme Court of Arkansas construing its statute one lien on both plants may be established if the material for both was furnished under one contract.

**8 F.2d at 126.**

As explained in **Burel v. East Ark. Lumber Co.**, **129 Ark. 58, 195 S.W. 378, 379 (Ark. 1917)**, the reason for the rule relied on

-6-

in **Powell** is that "[wh]en materials are furnished under a single contract for buildings to be constructed upon two or more lots, it cannot be expected of the materialman to know how much is used upon each lot."  The court there found that

> the materials were furnished in installments under one contract, and that the parties intended them to be included in one account, and that the entire account should be treated as a continuous and connected transaction.  In such cases the lien limitation begins to run from the last item of the account. . . .

*Id.*

8.   The evidence bearing on this issue includes the following:

*   On December 21, 2007, UST and Flowers entered into a Vessel Construction Agreement for the construction of twenty barges, in increments of four, at a base price which was subject to adjustment depending on the cost of steel.

*   On February 1, 2008, UST completed a credit application to allow it to purchase steel on credit from Falcon.  The types of steel UST anticipated purchasing -- plate, angle, channel, and flat bar -- are the types of steel specified for use in the construction of the barges.

*   Falcon purchased steel from UST for use in the Flowers barges starting on February 6, 2008, and continuing until August 29, 2008.  Purchases were also made from other steel suppliers during that time period.  Purchases were also made from Falcon for barges being built for another customer, Canal, but the purchase

-7-

orders were numbered so as to show which purchases were made on Flowers' account, and which on Canal's account.

\* Jeffrey Don Cluck ("Cluck") testified that, starting on April 28, 2008, he was employed as an industrial engineer for UST, with responsibility for "ordering the steel and figuring out what steel went into the barges." Cluck testified that as shipments of steel came in, a log book was used to record the purchase order numbers "which tied back to the barge." The record-keeping system appears to have been less than perfect, however, because Cluck explained that he had had to consult a spreadsheet showing what steel was received, and a parts list of each barge, "to figure out where that steel come in at, what stage that barge was at and where that piece of material would have been used." Cluck could not say for such which pieces of steel were incorporated into which barge.

\* On September 15, 2008, Falcon gave UST notice of lien on "Eight (8) 195'X35'X10'6" Barges located on the premises of US Technology Marine Services, LLC ("UST") at 6600 Grand Ave., Ft. Smith, AR  72904 (the "Barges"), to secure the total sum of $476,659.82 due Falcon Steel for material furnished -- consisting generally of steel -- as set forth in Exhibit A, to UST in connection with the project on the property described in Exhibit A."

\* On December 1, 2008, Falcon filed its Account of

Materialman's Lien in the Circuit court of Sebastian County, Arkansas. It subsequently filed suit to collect the debt and enforce the lien in the Circuit Court of Sebastian County, Arkansas, and that suit was removed to this Court.

The foregoing facts appear to bring this case within the rule of **Burel** and **Powell**. The steel for the barges was furnished in installments under one contract (the UST/Flowers Vessel Construction Agreement); the parties intended the purchase orders to be included in one account (the account UST owned Falcon); the entire account was treated as a continuous and connected transaction; and Falcon could not be expected to know which pieces of steel were used in which barge.

**Burel** and **Powell**, although old cases, have never been overruled and are still good law. The Court concludes, therefore, that Falcon's objection has merit, and should be sustained. To the extent it may be shown at plenary hearing that the steel furnished by Falcon to UST was referable to the single Vessel Construction Agreement between UST and Flowers, all the barges built pursuant to that contract[1] would be impressed with any valid lien of Falcon for steel furnished from February, 2008, through August, 2008.

9. UST objects to the Magistrate Judge's conclusion that

---

[1] With one exception. Barge BV103, Official No. 1213829 has been released from the lien.

Falcon perfected its lien.  The Magistrate Judge found that the last shipment of steel from Falcon to UST was made on August 29, 2008, making the Account Of Materialman's Lien filed by Falcon on December 10, 2008, timely.  UST takes the position that the August 29, 2008, shipment was steel for a barge identified as F2, as to which it has obtained a release.  The last steel before that, according to UST, was delivered on May 7, 2008, and as to that delivery and any preceding ones, UST argues that the December 10, 2008, Account Of Materialman's Lien is untimely.

This argument is answered, in the first instance, by the Court's analysis, *supra*, of the extent of the lien.  As for the effect of the release in question, the record is not perfectly clear what document is being referred to, but it contains a Partial Release And Assignment ("Partial Release") relating to the lien of Falcon in "barge BV103, official No. 1213829."  This being the only release of lien in the record, the Court believes it is the document referred to, and that barge BV103 is barge F2.  If this is the case, the release cannot bear the weight UST assigns to it.

The Partial Release was executed on December 30, 2008, after the events upon which attachment of the lien are based, and therefore does not undermine the basis for attachment of the lien. It only removes one barge from the ambit of the lien. It releases Flowers from any liens Falcon might have in BV103, but it

-10-

specifically "does not set over, transfer or assign to J. Russell
Flowers, Inc. any other claims or causes of action in the Lawsuit,
including but not limited to those pertaining to any lien on the
other barges or portions thereof at issue in the Lawsuit."  Thus
the Partial Release And Assignment appears to be of no moment to
the issues before the Court.

The Court, therefore, concludes that UST's objection that the
lien has not been perfected should be overruled.

10. UST also objects to the Magistrate Judge's
recommendation with regard to the balance of harms.  This
objection will be overruled based on the Court's analysis of the
extent of the lien.

**IT IS THEREFORE ORDERED** that plaintiff's **Motion To Strike
Defendant's Objections To Magistrate Judge's Report And
Recommendation And Defendant's Response To Plaintiff's Objections**
(document #56) is **denied.**

**IT IS FURTHER ORDERED** that **Plaintiff's Objections To
Magistrate Judge's Report And Recommendations** (document #51) are
**sustained.**

**IT IS FURTHER ORDERED** that **Defendant's Objections To
Magistrate Judge's Report And Recommendation And Defendant's
Response To Plaintiff's Objections** (document #55) are **overruled.**

**IT IS FURTHER ORDERED** that the **Magistrate Judge's Report And**

**Recommendation** (document #50) is **adopted in part and not adopted in part.**

The Report And Recommendation is **adopted** insofar as it recommends granting plaintiff's **Motion For Temporary Restraining Order To Enjoin The Transfer Of The Barges During The Pendency Of The Lawsuit** (document #35), and that motion is **granted,** subject to plaintiff's posting of bond in the amount of $75,000.00.

The Report And Recommendation is **not adopted** insofar as it makes a preliminary determination of the amount of any lien or the properties to which it might attach.

**IT IS SO ORDERED.**

                                        /s/ Jimm Larry Hendren
                                        JIMM LARRY HENDREN
                                        UNITED STATES DISTRICT JUDGE