```
           IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                    FORT SMITH DIVISION
```

**FALCON STEEL, INC.**                                                     **PLAINTIFF**

          v.            Civil No. 09-2007

**J. RUSSELL FLOWERS, INC.;**
**US TECHNOLOGY MARINE SERVICES, LLC;**
**and JP MORGAN CHASE BANK, N.A.**                                         **DEFENDANTS**

        **and**

**ROGERS INDUSTRIAL, INC.**                                                **INTERVENOR**

## MEMORANDUM OPINION

On the 3rd day of November, 2009, the captioned matter came on for trial to the Court. All parties appeared and were represented by counsel, with the exception of JP Morgan Chase Bank, N.A., which had settled with the plaintiff. The parties announced ready for trial, whereupon testimony was taken, documentary evidence received, and arguments of counsel heard. From all the foregoing, the Court finds and orders as follows:

## FINDINGS OF FACT

1. On December 21, 2007, US Technology Marine Services, LLC ("UST") entered into a Vessel Construction Agreement ("VCA") with J. Russell Flowers, Inc. ("Flowers") for the construction of twenty barges, in increments of four. A base price for each barge was established, which was subject to escalation or de-escalation depending on fluctuations in the cost of steel from a base price of $825/ton. UST would initially hold title to the barges, with title to each barge vesting in Flowers in proportion to progress

payments made under the VCA. Upon completion, and payment of the purchase price, UST was obligated to deliver each barge to Flowers free and clear of liens.

2. Mike Dismer ("Dismer") of UST contacted Jackie Swain ("Swain"), General Manager of Falcon Steel, Inc. ("Falcon") to arrange to purchase steel on credit to fulfill its obligations under the VCA. A copy of the VCA was not provided to Falcon, but Dismer informed Swain of the existence of the VCA and the expectation that a number of barges would be built pursuant to it. Dismer also gave Swain a copy of the materials list for the barges.

3. On February 1, 2008, UST completed a credit application for Falcon, and the first purchase order for steel went out from UST to Falcon on February 6, 2008. The types of steel shipped were the types of steel shown on the materials list for the barges.

4. Between February 6, 2008, and April 9, 2008, UST ordered $1,185,948.28 worth of steel from Falcon for use in constructing the Flowers barges. Shipments on these orders continued through May 12, 2008, following which there was a hiatus during which no steel was shipped. This was apparently because of financial difficulties on the part of UST, which became delinquent on payments to Falcon during that time. Terry Heinz ("Heinz"), President of Falcon, testified that he and his employees worked with UST to try to bring the UST account current, in what Heinz

described as "normal credit collection calls."

5. In late August, 2008, UST and Falcon reached an agreement that some additional steel would be shipped upon payment of $65,000. That sum was wire transferred from UST to Falcon on August 28, 2008. Falcon then shipped and invoiced $58,514.49 worth of steel to UST on August 29, 2008. The invoice reflects that this steel had been ordered by UST on its purchase order MAR-08-304F, which was dated April 4, 2008. Jeffrey Don Cluck ("Cluck"), who worked for UST as an Industrial Engineer from April 28, 2008, until March 20, 2009, explained that all the steel plate had been ordered on April 4, 2008, but that UST had asked that it be held in Falcon's warehouse until needed, a common practice in the industry on large orders.

6. The terms of the agreement to make this last shipment of steel were hotly disputed. Swain testified that Falcon requested UST make a payment of $65,000 on past due invoices before the steel would be shipped, and that it was an industry standard to apply payments to a customer's oldest invoices. Heinz testified that he told Ray Williams ("Williams") of UST that Falcon could not ship the steel until UST made a payment on its account. Heinz also testified that it was Falcon's normal practice to apply payments to the oldest debt.

Williams testified that the agreement was that UST would prepay for the steel, with a little bit of extra money to be

applied to the account.

The Court finds Swain and Heinz to be more credible on this issue than Williams. The steel in question was invoiced ("Invoice 0557405") after receipt of the $65,000 wire transfer, indicating that the steel was not been paid for in advance, and UST's own witness Cluck included Invoice 0557405 on a chart showing unpaid invoices that he prepared for trial.

7. On September 15, 2008, Falcon gave UST notice of lien on

> Eight (8) 195'X35'X10'6" Barges located on the premises of US Technology Marine Services, LLC ("UST") at 6600 Grand Ave., Ft. Smith, AR 72904 (the "Barges"), to secure the total sum of $476,659.82 due Falcon Steel for material furnished -- consisting generally of steel -- as set forth in Exhibit A, to UST in connection with the project on the property described in Exhibit A.

8. On December 10, 2008, Falcon filed its Account of Materialman's Lien in the Circuit Court of Sebastian County, Arkansas.

9. On December 23, 2008, Falcon filed suit to collect the debt and enforce the lien in the Circuit Court of Sebastian County, Arkansas, Case number CV-2008-2096. Falcon prayed for judgment *in rem* against eight barges alleged to be in various stages of completion; a first lien against the barges; judgment *in personam* against UST for the unpaid balance on the purchase price of the steel; prejudgment interest from August 29, 2008, until judgment; post-judgment interest; costs and attorney's fees; foreclosure of its lien; and an injunction against the removal or

transfer of the barges.

10. On December 30, 2008, Falcon and UST executed a Partial Release and Assignment ("Release"). The Release recited that Flowers had paid Falcon $100,000, in return for which Falcon released Flowers from "all claims or liens which [Falcon] has or may have in regard to barge BV103[1], Official No. 1213829," and transferred to Flowers "any and all claims or causes of action that pertain solely to any lien or alleged lien against the BV103, including but not limited to [Falcon's] claim asserted in the case pending in the Circuit Court of Sebastian County, Arkansas, Fort Smith District, Civil Action NO. CV2008-2096. . . ." The Release specifically provides that Falcon "does not set over, transfer or assign to [Flowers] any of its other claims or causes of action in the Lawsuit. . . ."

11. Also on December 30, 2008, Flowers filed a UCC Financing Statement with the Arkansas Secretary of State, claiming a security interest in

> Hulls BV101 thru BV120 and all items purchased or built for hulls BV101 thru BV120 . . . which are currently being fashioned into each of twenty (20) inland river deck barges . . . now being built by [UST] for [Flowers], as more specifically set forth in that certain Agreement entered into by and between [UST] and [Flowers] on or about December 21, 2007.

12. The Sebastian County case was removed to this Court on

---

[1] Different parties used different names for the barges. According to Heinz, the barge he knew as "F2" was released by this Release, leading the Court to conclude that BV103 is the same barge as F2.

-5-

January 23, 2009, on the basis of diversity jurisdiction. There are no objections to jurisdiction.

13. Flowers then asserted a counterclaim against Falcon, seeking a declaration that it has a lien against the barges, superior to that of Falcon.

14. On June 26, 2009, Rogers Industrial, Inc. ("RI") intervened, asserting a right to recover on liens of its own, and for all other relief to which it is entitled.

15. Neither Falcon nor UST kept close track of what steel was placed in which barge as construction progressed. However, Cluck created, for purposes of trial, a chart showing where steel from each of the outstanding invoices was used. He based this chart on purchase orders; invoices; shipping receivers (a type of shipping document); a record book in which UST recorded steel deliveries; and his knowledge about the stage of construction of each barge when each shipment of steel was received. Cluck testified that steel from the last two shipments went into barge F2, and that barges F1, F2, F3, F4, and F6 all incorporated Falcon steel shipped before June, 2008.

16. During the time it dealt with Falcon, UST also made steel purchases from other suppliers, as it had a right to do under the VCA. UST also made purchases from Falcon for barges being built for another customer, Canal, but the purchase orders were numbered so as to show which purchases were made on Flowers'

account, and which on Canal's account.

17. Six barges have been fully or partially built. Barge F1 has been transferred to Flowers, and while there was no other evidence on the matter, the Court infers from the terms of the VCA that there is and can be no lien against it. Barge F2 has been released by Falcon. Barges F3, F4, and F5 are under construction, and barge F6 is in a "preconstruction" stage at the shipyard.

18. It is undisputed that UST owes Falcon $376,659.82 and owes RI $103,043.14 for goods sold on account.

## CONCLUSIONS OF LAW

19. Materialmen's liens are creations of statute, and the Court turns to the Arkansas statutes relating to such liens to commence its analysis of the lien issues.

> Under **A.C.A. § 18-44-101**,
>
> [e]very contractor, subcontractor, or material supplier as defined in § 18-44-107 who supplies . . . material . . . in the construction or repair of . . . any boat or vessel of any kind, by virtue of a contract with the owner, proprietor, contractor, or subcontractor, or agent thereof, upon complying with the provisions of this subchapter, shall have, to secure payment, a lien upon the improvement . . . .
>
>   If the improvement is to any boat or vessel, then the lien shall be upon the boat or vessel to secure the payment for . . . materials . . . furnished.

It is undisputed that Falcon qualifies as a material supplier, and that UST is the contractor for Flowers as the owner

of the barges.[2]  Nor is there any contention that Falcon's lien filings were insufficient in any respect other than timeliness. The disputes in this case -- as they relate to Falcon -- are when the last lienable delivery of steel occurred, what the amount of the lien is, and which barges are impressed with the lien.

20.  The rule with regard to when a materialman must file its lien is stated in the ancient case of **Kizer Lumber Co. v. Mosely**, **56 Ark. 544, 20 S.W. 409 (Ark. 1892):**

> If the materials were furnished under one contract, he should file the account within 90 days after the last was delivered;  but, if the materials were furnished under separate and distinct contracts, it should be filed under each contract, within the time limited.  If, however, he began to furnish "without any specified agreement as to the amount to be furnished," or the time within which they were to be furnished, and there was a "reasonable expectation that further material" would be "required of him," and he was "afterwards called upon, from time to time, to furnish the same," he should file it within 90 days after the last item was delivered. In such a case, if the materials were furnished at short intervals, and were appropriate to the condition and progress of the building, a presumption would arise that it was understood from the beginning that the "material man was to furnish the same for the construction of the building as the same should be required;" and the account therefor should be considered as one continuous account and one demand, and the last item thereof would be "the date from which the limitation of the time of filing" should be taken.

**20 S.W. at 410** (internal citations omitted).

**Kizer** teaches that Falcon's lien dates from the August 29, 2008, shipment of steel.  The agreement between Falcon and UST for

---

[2]The gradual vesting of title based on progress payments began with a down payment upon "receipt of order and commencing of construction."

-8-

the furnishing of steel did not specify a particular amount of steel that would ultimately be furnished, or a particular time within which it would be furnished, but the steel was furnished with a reasonable expectation that more would be required -- enough for twenty barges -- and Falcon was called upon, from time to time, to furnish more. The materials were appropriate to the condition and progress of the barges -- so much so that Cluck could deduce which piece of steel went into which barge.

UST and Flowers contend that the interval between the May 12, 2008, shipment and the August 29, 2008, shipment was too long to bring Falcon within the rule of **Kizer**, but the Court does not agree. The steel shipped on August 29 had been ordered on April 4, and held by Falcon in its warehouse at UST's request. The length of the interval between shipments, under the circumstances here, is not evidence that a different contract or project had come into play, nor of an "afterthought" purchase such as the storm door in **Benton County Savings And Loan Ass'n v. Dyke Industries, Inc.**, **1976 WL 131 (Ark. 1976)** (unreported), because it is traceable to UST's request that the steel be held for later shipment and to UST's financial difficulties.

Falcon filed its Account of Materialman's Lien within 120 days of the August 29, 2008, shipment, bringing it within the time frame of **A.C.A. § 18-44-117**, which specifies when an account of materialman's lien must be filed. The Court concludes that

Falcon's lien was timely filed.

21. Under **A.C.A. § 18-44-110**, a timely-filed materialman's lien relates back to the date construction was commenced. Construction commences when there is delivery of a significant amount of building material to the building site. It appears from the evidence that the most significant amount of building material involved in constructing the Flowers barges was Falcon steel, and the Court finds that Falcon's lien includes all its unpaid sales to UST on Flowers' account, the undisputed amount of which is $376,659.82.

22. A materialman's lien ordinarily attaches to a single improvement on land, or a single vessel, but Arkansas law admits of a more complex situation, where materials are supplied under an "entire" contract and used in multiple units of construction under that contract. Perhaps the earliest exposition of this rule is **Tenny v. Sly**, **54 Ark. 93, 14 S.W. 1091 (Ark. 1891)**. There, materials were supplied to a builder to build houses on several lots, the materials being ordered from time to time and charged to one account. No record was kept of which house received which materials, and a single lien was filed against all the lots. The court found that one lien on the group of lots was appropriate, because "[t]he contract to furnish it was an entirety, and was used in carrying out the plan of one building operation."

In **Burel v. East Ark. Lumber Co.**, **129 Ark. 58, 195 S.W. 378,**

**379 (Ark. 1917),** the court explained that the reason for the rule is that "[wh]en materials are furnished under a single contract for buildings to be constructed upon two or more lots, it cannot be expected of the materialman to know how much is used upon each lot." The court there found that

> the materials were furnished in installments under one contract, and that the parties intended them to be included in one account, and that the entire account should be treated as a continuous and connected transaction. In such cases the lien limitation begins to run from the last item of the account. . . .

*Id.*

In **Powell v. Baker Ice Machine Co.**, **8 F.2d 125 (8th Cir. 1925)** (decision under Arkansas law), separate purchase orders were made for machinery to be delivered to and installed in separate plants on separate parcels of land. The court there affirmed a lien upon both parcels for the total price of the machinery, saying

> [t]he only controversy of merit on this appeal is whether appellee was entitled to a lien for the whole debt on both plants as an entirety, rather than separately on each plant for the equipment that went into each. Counsel for appellants concede that under the decisions of the Supreme Court of Arkansas construing its statute one lien on both plants may be established if the material for both was furnished under one contract.

**8 F.2d at 126.**

UST and Flowers argue that there was no contract between Falcon and UST, making the **Tenney/Burel/Powell** line of cases

inapplicable.  The Court does not read these cases so narrowly. While there must be an entire contract -- that is to say, one contract to build multiple units -- the cases do not require that the entire contract be between the materialman and the contractor or between the materialman and the owner.  The rule will apply where there is an entire contract between the contractor and the owner, pursuant to which the materialman supplies materials to the contractor on an open account.  Such an account may constitute a contract implied from the circumstances and conduct of the parties.  **Gillison Discount Building Materials, Inc. v. Talbot, 253 Ark. 696, 698, 488 S.W.2d 317, 319 (Ark. 1972).**

That this is the case can be seen from **Burel**, where the court focused on the contract between the owner and her contractor, not that between the contractor and the materialman.  The court looked at the following facts:

*   although the owner and the contractor testified that the four buildings in question were each being built pursuant to a separate contract, the materialman testified that the contractor had told him the buildings were all being built under one contract, and this was why he charged all the materials to one account;

*   the materials were sent indiscriminately to the various buildings;

*   construction went forward on all the buildings at the

same time; and

* no effort was made to separate the different items.

These facts and others were said to bear on the determination of "whether the original contract for the construction of the buildings was an entire contract," and the trial court was affirmed in its determination "that the parties themselves treated the building operation as one general piece of work."

Also, in **Kizer**, the court said

> [w]hen the defendant purchased of the plaintiff the first lot of lumber, he made no contract to buy any other materials, but said to it that he might need more. He did need it, and called upon it from time to time to furnish the same, which it did, and charged to him on account. It was furnished at short intervals, and, it seems, was appropriate to the condition and progress of his house as he used it in building the same. The presumption is, it was furnished under one contract, and the amounts due for the same should be treated as one demand.

**Kizer**, *supra*, **20 S.W. at 410.**

Contrast the foregoing cases with **Southern Lumber Co. v. Riley, 224 Ark. 298, 273 S.W.2d 848 (Ark. 1955),** in which two houses were built with materials bought on open account from a merchant whose practice was "to keep separate accounts . . . on each house constructed and the materials sent to each house were charged to that particular job as a separate account." The court there said

> [a]ppellant's attempt to invoke the rule that a lien may be asserted upon two or more lots where materials are furnished under a single contract is without application

-13-

>  in the instant case where it is undisputed that the parties treated each house as a separate account and contract.

**224 Ark. at 301, 273 S.W.2d at 850.**

A fair reading of these cases indicates that the situation in the case at bar falls within the **Tenney/Burel/Powell** line.  There was an entire contract between UST and Flowers for the building of multiple barges, and Falcon charged all the steel UST ordered for those barges to one account, with the continuing expectation that more steel would be ordered to finish out the project.  The steel was sent to the shipyard, without discrimination between barges and with no effort to separate the items, and construction on multiple barges went forward at the same time.  Under these facts, the presumption arises that all the materials were furnished under one contract, notwithstanding that it was fulfilled through separate purchases on an open account.

It is also contended by UST and Flowers that **A.C.A. § 18-44-101(b)** contemplates that any lien will be against only one vessel, or the legislature would not have used the language "the boat or vessel."  This argument was rejected in **Tenney**, and will not be given further consideration here.

23.  When the Court takes into consideration all the foregoing, it finds that Falcon is entitled to a lien in the barges constructed with its steel, or under construction with its steel, excepting only barges F1 and F2, which have been released.

The Court, therefore, finds that barges F3, F4, F5, and F6 are impressed with Falcon's lien.

24. Falcon seeks an award of prejudgment interest on the debt due to it from UST. Under Arkansas law,

> [p]rejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion. This standard is met if a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action. Where prejudgment interest may be collected at all, the injured party is always entitled to it as a matter of law.

**Travis Lumber Co. v. Deichman, 2009 Ark. 299, --- S.W.3d ---, 2009 WL 1423542 (Ark. 2009)** (internal citations omitted).

Where no rate of interest is agreed upon, the Arkansas Constitution prescribes the rate of 6% per annum, and the Arkansas courts have held that such is the appropriate rate of prejudgment interest. **Wooten v. McClendon, 272 Ark. 61, 612 S.W.2d 105 (Ark. 1981).**

The Court finds that under the circumstances of this case, Falcon is entitled to an award of prejudgment interest, as against UST, in the amount of 6% per annum from August 29, 2008, until the date of this judgment, on the sum of $376,659.82.

25. Turning to RI's claim, the Court must consider whether a supplier of goods used in the construction of the barges, but not incorporated into them, can obtain a materialman's lien. In

Arkansas, to entitle a materialman to a lien, "the material or machinery furnished must, as a rule, be attached to, or become a part of, the improvement or building upon land, or must be used in making such improvement." **Meek v. Parker, 63 Ark. 367, 38 S.W. 900, 901 (1897).** The statute is not intended to give a lien upon personal property.

In **Meek**, the court considered a claim for "two steel wrenches, fifty feet of rubber belting, also certain 'dry-kiln wheels and boxes'." It found, of the wrenches and belting, that they

> were not in any way attached to the real estate, nor were they a necessary part of the machinery thus attached. They were only personal property, having no connection with the real estate, and for the price of which no lien attaches thereto.

**38 S.W. 901.**

The "dry-kiln wheels and boxes" were viewed differently. They were specially constructed to work together, and designed for use only at the lumber company on the real property in question. The court held as follows:

> But the use of these wheels and axles was confined to the tramway of this particular dry kiln, and we are of opinion that, although not actually fastened thereto, they were, in law, constructively attached, and a part of the building, within the meaning of the act above quoted. We hold, therefore, that the plaintiffs are entitled to a lien for the price thereof upon the building and land, to the extent of the ownership of the lumber company.

*Id.*

RI placed into evidence a large volume of invoices, which the Court has reviewed to determine what sorts of materials it supplied. From some of these invoices, it cannot be determined what product was sold.[3] Almost all of them, however, reflect the sale of such things as hoses, pressure washers, oil absorbent, shop rags, grinders, glasses, tape measures, hard hats, clamps, rope, bug zappers, fuses, coveralls, chalk, ear plugs, paint pens, hammers, batteries, duct tape, filters, air conditioners, gloves, spray bottles, folding chairs, bits, valves, extension cords, saw blades, flashlights, fire extinguishers, ladders, rainsuits, concrete, brooms, light bulbs, lamps, air compressors, water coolers, shovels, glue, solvent, etc. In short, all the myriad supplies needed to operate an industrial concern.

These items are akin to the steel wrenches and rubber belting in **Meek**, and as such are mere personal property that will not give rise to a materialman's lien. For this reason, RI's claim for a materialman's lien must fail. The amount of UST's debt to RI is admitted, however, and based on the general prayer in its Complaint In Intervention, the Court finds that RI is entitled to a judgment against UST for $103,043.14. The Court further finds that RI is entitled to prejudgment interest at the rate of 6% per annum on this amount from the date of the last entry on the

---

[3] For example, the cannot determine what "PART #: .045 WIRE LIN ED022659 OUTERSHIELD .045 71M 25# 40/PALLET" is, or how it might be used in building a barge.

account, December 17, 2008, until the date of judgment.

26. Finally, the Court considers the status of Flowers' lien, which it asserts is superior to that of Falcon. Flowers filed a UCC Financing Statement with the Arkansas Secretary of State on December 30, 2008. While Falcon contends that this document is of no force and effect, the Court need not resolve that issue. Falcon's lien relates back to the commencement of construction of the barges, in early 2008, and clearly has precedence over a lien taking effect in December, 2008. See **A.C.A. § 18-44-110.**

**IT IS THEREFORE ORDERED** that Falcon Steel, Inc., is entitled to judgment against U.S. Technology Marine Services, LLC, for the sum of $376,659.82, with prejudgment interest at the rate of 6% per annum from August 29, 2008, until the date of judgment.

**IT IS FURTHER ORDERED** that Falcon Steel, Inc., is entitled to a first lien on barges identified as F3, F4, F5, and F6, now under construction at the shipyard located at 6600 Grand Ave., Ft. Smith, Arkansas, to secure its judgment against U.S. Technology Marine Services, LLC.

**IT IS FURTHER ORDERED** that Rogers Industrial, Inc., is entitled to judgment against U.S. Technology Marine Services, LLC, in the sum of $103,043.14, with prejudgment interest at the rate of 6% per annum from December 17, 2008, until the date of judgment.

Judgment in accordance with this Memorandum Opinion will be entered this date.

**IT IS SO ORDERED,** this 17th day of November, 2009.

                                                                 **/s/ Jimm Larry Hendren**
                                                                 **JIMM LARRY HENDREN**
                                                                 **UNITED STATES DISTRICT JUDGE**