IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**FALCON STEEL, INC.**                                                                 **PLAINTIFF**

v.                                         CIVIL NO. 09-2007

**J. RUSSELL FLOWERS, INC., ET AL**                                     **DEFENDANTS**

And

**HILDA L. SOLIS, Secretary of Labor**
**United States Department of Labor**                                    **PLAINTIFF**

v.                                         CIVIL NO. 09-2161

**DIRECT WORKFORCE, INC., ET AL**                                     **DEFENDANTS**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before this Court is a Motion to Intervene by Direct Workforce, Inc. (Doc. 119) filed January 8, 2010 with an attached Motion to Continue Sale (Doc. 119-3) in 09-200 and the Motion for Temporary Restraining Order (Doc. 3) in 09-2161 by Hilda Solis, Secretary of Labor for the United States Department of Labor. The matters has been referred to the undersigned for a report and recommendation by Order (Doc. 8).

**I.    Background:**

On December 10, 2008, Falcon filed its Account of Materialman's Lien with the Sebastian County Clerk and Recorder for material supplied to US Marine Technology Services in the construction of the barges in question. (Doc. #2, Exhibit D).  US Marine Technology Services

is insolvent (Doc. #2, p.3) and advised Falcon that US Marine Technology Services closed its doors and laid off its employees.

The court entered judgment in favor of Falcon Steel and Rogers Industrial, Inc. against US Marine Technology Services in the amount of $376,659.82 and $103,043.14 respectively. The court also granted a first lien in favor of Falcon Steel on the barges referred to as F3, F4, F5 and F6 ("barges") located at the shipyard in Fort Smith, Arkansas. The judgment further provided that if the judgment was not paid within 10 days that the barges should be sold at public auction. (Doc. 85).

The judgment not having been paid the property was duly scheduled for sale at public auction and the sale is scheduled for January 13, 2010 at 1:30 P.M. (Doc. 118).

It appears that J. Russell Flowers, Inc. ("Flowers") and the Raymond F. Williams Trust ("Williams") contracted with Direct Workforce, Inc. on July 10, 2009 to complete the barges in question and part of the contract was that Flowers and Williams would transfer title to Direct Workforce, Inc. (Doc. 119-1). No explanation is given as to how or when Flowers and Williams acquired title from UST. Direct Workforce began work on the barges sometime after the contract date and it appears that all parties were aware that work was being performed on the barges but the exact identity of the company doing the work may not have been know. (Doc. 50, p. 3).

Direct Workforce, Inc. now contends that it has performed work and provided materials to get the barges seaworthy in the amount of $762,249.88 and has only been paid $200,000 to date. (Doc. 119, ¶ 8). Direct does not allege what amount is labor and what amount is material, nor does it purport to assign any specific amount to any specific barge. Direct alleges that after

entering into the Agreement it was assured that the barges were free and clear of any encumbrancers. (Doc. 119, ¶10)

The record is clear that Falcon's lien was of record on December 10, 2008 and that any review of the county records would have shown that any assurances were not true. Direct seeks to stay the sale and contends it will be irreparable harmed by the loss of the barges if the sale is allowed to proceed.

On December 29, 2009, Hilda Solis, the Secretary of Labor, filed 09-2161 claiming that Direct Workforce had violated federal law by improperly paying its employees and sought a Temporary Restraining Order and Preliminary Injunction concerning the sale of the barges set for January 13, 2010. (Doc. 3).

The court conducted a telephone conference with the parties and scheduled a hearing on the Motion for January 11, 2010.

On January 8, 2010 Direct Workforce, Inc. filed its Motion to Intervene with attached Motion to Continue the Sale. (Doc. 119).

The court conducted a hearing on January 10, 2010. Stephen Niswanger appeared for Falcon Steel, Sheryl Vieyra appeared for the Department of Labor and Stephen Lancaster appeared for Direct Wlorkforce, Inc. Mr. Joel Henderson, representing J. Russell Flowers, Inc., stated he had no objection to the Motions and asked to be excused.

**II.   Discussion:**

The issues before the court is whether the Marshal's sale scheduled for January 13, 2010 should be rescheduled because of the claims of the Secretary of Labor and the Motion to Intervene and Motion to Continue of Direct Workforce, Inc.

**U.S. Department of Labor:**

The United States Department of Labor does not seek to stop the judicial sale of the barges in question but to have proper Notice given at the sale that the barges cannot be moved or enter into commerce until the debt to the Department of Labor is satisfied. (See Exhibit A). Copies of the Notices have been delivered to the Marshal's service for delivery to any party bidding at the sale of the barge and the Marshal's service has been instructed to deliver the said Notice. Falcon Steel agreed that the barge will not be moved until the debt to the Department of Labor has been resolved if it is the successful bidder and expressed no objection to the Notice.

Based upon the above the Motion for Temporary Restraining Order and Preliminary Injunction in 09-2161 is MOOT.

**Direct Workforce Inc.:**

Direct sought leave to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2) in case 09-2161. Under Rule 24(a)(2), the proposed intervenor must "(1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protected." *United States v. New York*, 820 F.2d 554, 556 (2d Cir.1987) (*citing Restor-A-Dent Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 874 (2d Cir.1984)). Failure to satisfy any one of these requirements is a sufficient ground to deny the application. *United States v. New York*, 820 F.2d at 556 (citing *United States v. City of Chicago*, 798 F.2d 969, 972 (7th Cir.1986), cert. denied sub nom. *O'Sullivan v. United States*, --- U.S. ----, 108 S.Ct. 771, 98 L.Ed.2d 858 (1988)). Thus, an untimely motion to intervene must be denied. *NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1973); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594 (2d

Cir.1986) (quoting *NAACP v. New York*, and citing *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978)).

An application's timeliness must be evaluated against the totality of the circumstances before the court. *NAACP v. New York*, 413 U.S. at 366, 93 S.Ct. at 2603; *United States v. Yonkers Bd. of Educ.*, 801 F.2d at 595. While not necessarily an exhaustive enumeration, the following factors should guide the district court's determination: (1) the length of time the applicant knew or should have known of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness. *United States v. New York*, 820 F.2d at 557. In addition, post-judgment intervention is generally disfavored because it fosters delay and prejudice to existing parties. *United States v. Yonkers Bd. of Educ.*, 801 F.2d at 596 (collecting authorities).

It is clear that Direct Workforce knew or should have know of Falcon's lien from the date they began work on the barges. Falcon Steel perfected its lien on December 10, 2008 by filing an Account of Materialman's Lien in the Circuit Court of Sebastian County. (Doc. 2, p.22) and filed suit to foreclose its lien on December 23, 2008. (Doc. 2) Direct Workforce did not contract with Flowers and Williams until July 10, 2009. While Direct alleges that it was "repeatedly assured that the barges were free and clear" it does not allege that it made any effort by searching the county records to determine if such was the case.

It is also clear that a hearing was conducted on Falcon's Motion for Temporary Restraining Order on September 11, 2009. (Doc. 49). At the hearing Mr. Cluck testified that he was the project engineer for UST and that he went to work for the company currently working on

the barges (Direct Workforce) because he had expert knowledge about the project. No evidence was put forth that the barges had changed ownership and the Direct Workforce, Inc. was the new owner.  Mr. Cluck also testified at the bench trial which was held on November 3, 2009. (Doc. 80).  It also appears that Direct Workforce was subpoenaed but did not testify at the trial in November. (See Exhibit B-1 & B-2).  It is clear that Direct Workforce knew or should have known of Falcon's efforts to foreclose its lien and had ample time to intervene prior to a few days before the scheduled judicial sale.

Intervention may appropriately be denied where the intervenor knew or reasonably should have known of their rights long before making application and slept on them. *See EEOC v. AT&T*, 365 F.Supp. 1105 (E.D.Pa.1973), aff'd in part and rev'd in part, 506 F.2d 735 (3d Cir. 1975); *SEC v. Bloomberg*, 299 F.2d 315 (1st Cir. 1962).

It cannot be said, however,  that Falcon has suffered any prejudice because of Direct's delay and it is clear that Direct may suffer prejudice if not allowed to intervene. The current judgment would direct any excess funds to be paid to US Technology Marine Services.  (Doc. 85, p. 2). US Technology Marine Services appears to be a subsidiary of US Technology d/b/a Raymond F. Williams Trust. (Doc. 19, ¶5).  If Direct Workforce is the owner of the barges such disbursement to US Technology Marine Services may work an injustice.

Even if the Motion were timely it appears to be without merit as to Falcon's lien. The Arkansas Materialman's Lien Statute provides that:

> a) Every contractor, subcontractor, or material supplier as defined in § 18-44-107 who supplies labor, services, material, fixtures, engines, boilers, or machinery in the construction or repair of an improvement to real estate, or any boat or vessel of any kind, by virtue of a contract with the owner, proprietor, contractor, or

subcontractor, or agent thereof, upon complying with the provisions of this subchapter, shall have, to secure payment, a lien upon the improvement and on up to one (1) acre of land upon which the improvement is situated, or to the extent of any number of acres of land upon which work has been done or improvements erected or repaired.

(b) If the improvement is to any boat or vessel, then the lien shall be upon the boat or vessel to secure the payment for labor done or materials, fixtures, engines, boilers, or machinery furnished.

It does not appears that Direct Workforce is a contractor and materialman as defined by the statute. Direct Workforce entered into a contract to complete the barges on July 10, 2009. (Doc. 119-1) Direct Workforce, Inc. now contends that it has performed work and provided materials to get the barges seaworthy in the amount of $762,249.88 and has only been paid $200,000 to date. (Doc. 119, ¶ 8).

The contract provides that Direct Workforce will have ownership of the barges (Doc. 119-1, Article I), that the risk of loss would be on Direct (Doc. 119-1, Article II, 2.03, p. 3) and that Direct would transfer title to Flowers and Williams when the barges were complete. (Doc. 119-1, Article II, 2.06, p. 4). The Movant's Motion to Intervene states that ownership of the barges went to Direct. (Doc. 119, p. 2). The Defendant's Motion to Continue the Sale also states that the Movant is the owner of the barges. (Doc. 119-3, ¶7). It is impossible for the Movant to maintain a materialman's lien or labor's lien when he is the owner and has possession of the barges.

As owner of the barges Direct Workforce would have been on notice of Falcon Steel's previously filed lien and would have acquired ownership subject to the lien. Direct Workforce may still have an interest in any proceeds of sale in excess of Falcon's lien.

If Direct did qualify under the materialman's lien statute the next issue would concern the priority of competing liens on the barges.  Pursuant to Arkansas Code Annotated section 18-44-110, for purposes of priority over other creditors, a materialman's lien is considered to relate back to the date on which the particular material was furnished. Ark.Code Ann. § 18-44-110(a)(1) (Repl.2003). *See Planters Lumber Co. V. Jack Collier East Co.*, 234 Ark. 1091, (1962) (holding that when Planters and Young perfected their liens by complying with § 51-613, Ark.Stats., as they did, then their liens related back to 'the commencement of such building' as stated in § 51-607, Ark.Stats.; said liens of Planters and Young were on an equality with the lien of Big Rock (lien filed prior to mortgage); and East could not by paying Big Rock thereby defeat Planters and Young of the priority that they enjoyed because the Big Rock materials were furnished before the construction mortgage was placed of record, and Planters and Young were on an equality with Big Rock.)

According to Arkansas Code Annotated section 18-44-117(a)(1) (Supp.2007), a materialman has 120 days after materials are last furnished to perfect his or her lien by either filing a lawsuit or filing notice of the lien with the clerk of the circuit court of the county in which the property subject to the lien is situated. *National Home Centers, Inc. v. Coleman,* 373 Ark. 246, 253-254, 283 S.W.3d 218, 223-224 (2008)(citations omitted).

The question is whether Direct would be entitled to share pro-rata if the proceeds from the sale were not sufficient to discharge all liens.  A.C.A. 18-44-110(a)(3).  This argument however does not take into consideration the statutory provision which provides that in cases where "the prior encumbrance was given for the purpose of funding construction or repair of the improvement, that lien shall have priority over all liens given by this subchapter".  A.C.A. 18-44-

110(b)(1)(B).  It would appear that Falcon's lien would take precedence over any lien rights of Direct Workforce, Inc.

### III.     Conclusion:

The undersigned recommends that the U.S Marshal's Service be directed to deliver a copy of the NOTICE provided by the U.S. Department of Labor to each person participating in the Marshal's sale on January 13, 2010 and the Motion by the U.S. Department of Labor for Temporary Restraining Order and Preliminary Injunction be **DENIED** as **MOOT.**

It is further recommended that Motion to Intervene by Direct Workforce, Inc. be **GRANTED** but that the Motion to Continue the Sale be **DENIED.**

It is further recommended that the proceeds of the judicial sale be applied, first, to the costs of sale, second , to the judgment of Falcon Steel, Inc., and that any excess be paid into the registry of the court until a determination of the rights of the U.S. Department of Labor and Direct Workforce can be determined.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of January 2010.

/s/ *J. Marschewski*
JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE