```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   FORT SMITH DIVISION
```

**FALCON STEEL, INC.**                                           **PLAINTIFF**

        v.        Civil No. 09-2007

**J. RUSSELL FLOWERS, INC.;**
**US TECHNOLOGY MARINE SERVICES, LLC;**
**and JP MORGAN CHASE BANK, N.A.**                               **DEFENDANTS**

        and

**ROGERS INDUSTRIAL SUPPLY CORP.**                               **INTERVENOR**

<u>**AMENDED AND SUBSTITUTED ORDER**</u>

Now on this 3rd day of January, 2011, the Court enters this Amended And Substituted Order, to correct two typographical errors in the dates on page 8 hereof:

On the 16th day of December, 2010, plaintiff's **Motion For Writ Of Assistance** (document #191) came on for hearing, and from said motion, the response thereto, and the evidence and arguments presented at hearing, the Court finds and orders as follows:

    1.  On November 17, 2009, Falcon Steel, Inc. ("Falcon Steel") obtained a Judgment against US Technology Marine Services, LLC ("USTM Services") in the sum of $376,659.82, plus interest at .33% per annum until paid.  The basis for the Judgment was that USTM Services had failed to pay Falcon Steel for steel purchased for use in building a group of river barges (the "Barges") at a shipyard (the "Shipyard") in Fort Smith, Arkansas.

    2.  USTM Service did not pay the Judgment.  Pursuant to provisions in the Judgment allowing Falcon Steel to foreclose USTM

Service's rights in the Barges if its Judgment was not timely paid, Falcon Steel caused a judicial sale to be conducted. Falcon Steel offered the winning bid of $455,000.00 for the Barges at this sale, which took place on January 13, 2010.

3. The Barges Falcon Steel bought at the foreclosure sale were not seaworthy, and their removal from the Shipyard presented a problem. One Barge was almost complete - needing only painting - and one was roughly 60% complete. Given their size and weight, there are only two ways to get these Barges out of the Shipyard: either complete and launch them, or cut them up and scrap them.

The remaining Barges had not reached that stage of completion, being in the form of pieces of steel which can be trucked away.

4. Falcon Steel attempted to reach an agreement with USTM Services (and/or USTM Property) for use of the Shipyard to complete the Barges, with no success. Counsel for the USTM companies notified Falcon Steel on April 6, 2010, that it would be charged rent on the Shipyard of $1,000 per day until the barges were moved; that as of April 13, 2010, the past due rent would be $90,000.00; and that Falcon Steel must "adequately bond against any damage to the property prior to entry on the property and pay all past due rents." (Docket Entry #137-1).

5. Falcon Steel, considering this demand too high, sought and obtained post-judgment discovery regarding the Shipyard. A

copy of the Commercial Lease by which USTM Services leased the Shipyard from USTM Property was produced in that discovery. The rental rate for the Shipyard in the Commercial Lease is $20,000 per year, or $1,666.66 per month.

    6.   Based on the Commercial Lease, Falcon Steel offered to pay $1,666.67 per month to use the Shipyard to complete the Barges. When this offer was refused, Falcon Steel filed the Motion For Writ Of Assistance now under consideration.

    7.   At the commencement of the hearing on the motion now under consideration, counsel for USTM Services contended that the Court lacked jurisdiction to proceed. The argument was barely formed, amounting to nothing more than a statement that the case ended on January 13, 2010, with the judicial sale of the Barges. The Court overruled the objection to its jurisdiction on the record at the hearing, and now repeats that ruling. The Judgment has not been satisfied. See Orders dated June 22, 2010, and August 6, 2010.

    8.   A few words about the relationship between USTM Services and USTM Property is appropriate here. These companies are clearly interrelated, although the extent of this interrelationship is not yet so clear.[1] What is known at this point is that USTM Property is owned - in equal parts - by Raymond Williams ("Williams") and

---

[1] Still pending before the Court is the motion of intervener Rogers Industrial Supply Corp. to pierce the corporate veil of these and other companies and impose liability for its Judgment on Williams himself.

Miller Investment Corporation.  USTM Services is wholly owned by Williams.

USTM Property owns the Shipyard, subject to a Commercial Lease to USTM Services until October 23, 2011.  USTM Services has not paid rental on the Shipyard for many months, but USTM Property has taken no steps to cancel the Commercial Lease.

USTM Services ceased operations at the Shipyard some 12-18 months ago.  In connection with the rental of the Shipyard, Falcon Steel has been dealing with Williams, and with an attorney who represents both USTM Services and USTM Property.  All parties appear to blur the distinction between the two companies. Williams discusses both as though they were his alter egos.

USTM Property contends that it is an outsider to the dispute between Falcon Steel and USTM Services, and that its property (the Shipyard) cannot be commandeered at its expense in connection that dispute.  The Court finds no merit in this argument.  Given the extant Commercial Lease, and the continued failure of USTM Property to take any action against USTM Services for nonpayment thereof, any Order the Court makes *vis a vis* the Shipyard impacts USTM Services, the Judgment debtor, not USTM Property.

9.   Under the All Writs Act, **28 U.S.C. § 1651**, the Court is empowered to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law."  Under the circumstances described in this Order, the Court

finds that the requested Writ Of Assistance is necessary in aid of its jurisdiction. Without it, Falcon Steel will not be able to complete and launch the Barges it bought at a judicial sale designed to assist it to recover losses caused by USTM Services.

The Court also finds that the writ is agreeable to the usages and principles of law, particularly the concept of equity. The reason Falcon Steel (which is in the business of selling steel, not the business of building barges) bought the Barges in the first place is that USTM Services failed to pay Falcon Steel for the steel it purchased to build the Barges, then failed to pay the Judgment entered against it for the price of the steel. Falcon Steel is simply trying to recoup proven losses caused by USTM Services.[2]

For these reasons, the Court finds that a Writ Of Assistance should issue, and turns to the particulars of that Writ.

10. First among those particulars is the question of a reasonable rental for the Shipyard. The Court finds that the best evidence available is the Commercial Lease, pursuant to which the Shipyard is currently rented out at $20,000 per year.

---

[2] USTM Property argues that it should not have to make the Shipyard available for the rental rate in the Commercial Lease just to make it possible for Falcon Steel to complete the Barges "at a profit." This argument ignores evidence that Falcon Steel will have to pay the Department of Labor over $28,000 to cover unpaid labor costs on the Barges before they can be launched, and will have to pay an adjoining landowner $98,000 in unpaid charges for the use of its slip. The Court considers it highly unlikely that Falcon Steel will recover its losses in full on the sale of the steel, let alone realize any profit on the Barges.

USTM Property contends that $35,000 per month is a fair rental for the Shipyard, but this contention is based on the testimony of Williams. The Court does not consider Williams to be a credible witness.

Williams attempted to justify a rental of $35,000 per month by claiming that although the rate in the Commercial Lease was $20,000 per year, USTM Services also made payments on two mortgages against the real property where the Shipyard is located. There is no documentation to support this contention, and the Commercial Lease contains an "entire agreement" clause, stating that the Commercial Lease "contains the entire agreement between the parties." Thus USTM Services had no legal obligation to make the mortgage payments.

Williams also attempted to justify the $35,000 per month rate by saying it was 1% of the value of the property itself. This percentage was unsupported by anything other than Williams' own self-serving testimony. In addition, he applied it to the value of the entire 88-acre parcel upon which the Shipyard sits, even though the Shipyard operation comprises only three or four acres.

In the absence of credible evidence to the contrary, the Court finds that an appropriate rental rate for the Shipyard is $1,666.00 per month.

11. A related question is what period of time should be covered by the rental. USTM Property contends that the rental

period should begin on the date of the judicial sale, January 13, 2010. Falcon Steel disagrees.

The evidence shows that Falcon Steel has not been able to commence any operations at the Shipyard to complete or haul off the Barges, although its agents have been allowed onto the property to evaluate what will be required to do so. USTM Property insisted on a rental agreement before allowing Falcon Steel to use the Shipyard, but the Court finds no evidence that it negotiated in good faith to determine that rate. When Falcon Steel attempted to subpoena information about the Shipyard so as to determine an appropriate rental, USTM Property moved to quash the subpoena. When that motion was denied, USTM Property moved for reconsideration. When that motion was denied, USTM Property appealed.

When the appeal was dismissed, Falcon Steel finally obtained the Commercial Lease, and could point to it as a basis for determining reasonable rental for the Shipyard. Still, no agreement could be reached. Falcon Steel then filed the motion now under consideration.

Given that these delays in reaching agreement about rental are all attributable to USTM Services and USTM Property, the Court finds it inequitable to charge Falcon Steel rental for the period of time between the judicial sale and the hearing on the Motion for Writ of Assistance. In addition, it is now only a few days

before the Christmas/New Year holiday, a time when starting up a business operation would be next to impossible. For these reasons, the Court finds the appropriate starting date for the rental period to be January 3, 2011.

The Court will direct that the rental period run until July 3, 2011, in light of testimony by Terry Heinz, President and CEO of Falcon Steel, that he expects it to take no more than six months to complete and launch the two Barges that are close to completion, and to remove the pieces of the remaining Barges.

**IT IS THEREFORE ORDERED** that plaintiff's **Motion For Writ Of Assistance** (document #191) is **granted,** as follows:

\*   USTM Services (and USTM Property if it is now in control of the Shipyard) are directed to allow access to the Shipyard by Falcon Steel commencing on January 3, 2011, and for a period of six months thereafter, or until the Barges are completed and launched, or removed, whichever occurs sooner.

\*   Falcon Steel is to pay rental for the Shipyard to USTM Services (or to USTM Property if it is now in control of the Shipyard), at the rate of $1,600.00 per month, payable on the third day of each month starting January 3, 2011.

**IT IS SO ORDERED** this 3rd day of January, 2011, nunc pro tunc the 22nd day of December, 2010.

      /s/ Jimm Larry Hendren
      **JIMM LARRY HENDREN**
      **UNITED STATES DISTRICT JUDGE**

-8-