IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

FALCON STEEL, INC.                                                                        PLAINTIFF


        V.                                    NO.  2:09-CV-02007-JLH


US TECHNOLOGY MARINE SERVICES, LLC,
J. RUSSELL FLOWERS INC., and
JP MORGAN CHASE BANK, NA                                              DEFENDANTS


ROGERS INDUSTRIAL, INC.                                                          INTERVENOR


REPORT AND RECOMMENDATION

Before the court is the Defendant, US Technology Marine Services, LLC (USMT)

Motion for Emergency Relief (ECF No. 212) filed on April 1, 2011. The Plaintiff filed its

Response (ECF No. 213) on April 6, 2011.  The matter was referred to the undersigned on April

5, 2011 and a hearing was conducted on April 18, 2011.

Background:

On December 21, 2007, UST agreed to build J. Russell Flowers, Inc.("Flowers") 20

barges in four-barge increments. *See Falcon Steel, Inc. v. J. Russell Flowers, Inc*.  635 F.3d 369,

371 (C.A.8 (Ark.),2011). Falcon Steel furnished steel for the construction of the barges but was

not paid in full. Falcon Steel was granted judgment against USMT for the sum of $376,659.82

plus interest and fees on November 17, 2009  and was granted a first lien on barges which were

under construction and located on the Defendant's shipyard. (ECF No. 85).  The barges were sold

at judicial sale on May 14, 2010 to Falcon Steel (ECF No. 163) but Falcon had difficulty gaining

access to the barges.  After additional litigation Falcon Steel gained access to the barges through

an order of the Court granting Falcon Steel's Motion for Write of Assistance (ECF No. 203). The

order granted Falcon Steel access to the shipyard commencing January 3, 2011 for a period of six

months and established a rental fee to be paid by Falcon Steel to USTM Property in the amount

of $1,600 per month.

**Discussion:**

Terry Hines testified that Falcon Steel hired River Valley Shipbuilders to complete the F-

3 and F-4 barges.  The F-3 barged was completed and launched from the USTM shipyard and

subsequently Paul Palmer, president of River Valley Shipbuilders, acting on instructions from

Falcon Steel, removed all of the remaining barges and material to the River Valley Shipbuilders.

USMT contends that Falcon removed material that was not to be used to complete barges

F3-F6 and filed the current Motion for Emergency Relief (ECF No. 212) on April 1, 2011.

The first four items in the Motion for Emergency Relief filed by USTM are a 1) Red 40'

Yard Truck (See Exhibit F, Figure A), 2) Loading Dock (See Exhibit F, Figure B), 3) Work

Platforms/Ladders (See Exhibit F, Figure C) and Barge Transfer Rails (See Exhibit F, Figure D).

Mr. Hines testified that Falcon Steel had no interest in these item and acknowledged that they

were not part of the material to be used in the construction of the barges. The Loading Dock,

Work Platform and Barge Transfer rails were never removed from the USMT property. The Red

40' Yard Truck was removed in error but has been returned.  Terry Hines also testified that after a

review of the specification sheet (Falcon's Exhibit 2) he determined that the Channel-

MC18@42.7#-40' piece of steel was not intended to be used in the construction of any of the

Falcon barges and it has been returned. The remaining items listed in USTM's Exhibit A are in

dispute.

Jeffrey Cluck testified for USMT that he had prepared an exhibit that purports to show what material he thought Falcon Steel should have taken to complete the barges and what material was taken that did not apply to the barges. (See Exhibit A).  He contended that the items he listed that needed to be returned were items that were intended for construction of other Flowers barges (R. 0:50:45) which will be referred to as F7-F10.  The court was not furnished with any purchase orders showing that the item listed on Exhibit A were designated for any of the barges nor has USMT ever asserted previously that any of the steel on their shipyard was designated for Flowers barges F7-F10.

Jeffrey Cluck was the original foreperson hired by USMT Services to complete the barges.  Mr. Cluck testified that work on the barges by USMT ceased in January 2009 (R. 0:50:08).  At the time work ceased by USMT only two Flowers barges had been completed and launched. The court notes that Mr. Cluck previously testified on September 11, 2009 that none of the steel on the ground belonged to Falcon Steel because all of their steel had been incorporated into existing barges. (ECF No. 71, p. 31-32).  Previously the argument had been that Falcon steel had gone into the infrastructure of the shipyard, Flowers barges F1 and F2 and one barge built for Canal. (Id., p. 34).

Mr. Cluck testified that Item number 1 (Angle-5/16"x3"x5"-40'rolled)(USMT Exhibit A) was not formed properly, was just scrap and could not be used on the barges. (R. 1:26:32) Mr. Palmer, however,  testified that the items number 1 and 2 could be used in the construction of F5 and F6. (R. 3:25:22). He admitted that the pieces were rolled incorrectly but they still could be used. (R. 3:25:35-3:26:14).  Mr. Palmer also testified that all of the Channels could be used. (R. 3:27:20).  He testified that the pieces were not excess but that he did not have enough to finish F5

and F6. (R. 3:27:30). Mr. Palmer testified that he did not remove all of the steel on USMT's

property but only the steel that was listed as barge material and was listed in Falcon Exhibit 2 (R.

3:28:59). Mr. Palmer denied that he had any conversation with Mr. Harris about barges F7, F8,

F9, or F10.

Mr. Palmer denied that he removed the (4) Flat–1/2" x11" 20' listed in the Motion for

Emergency Relief (ECF No. 212, p. 3) (R. 3:22:38). Mr. Palmer testified that he did have an

inventory of the items he removed from the yard but did not have it with him at the hearing. (R.

3:22:36).

Mr. Cluck testified that USMT had the right to assert a claim to the property. (R.

1:34:51). However, the court notes that a purported contract was entered into between J. Russell

Flowers, Inc., Raymond F. Williams Trust and Direct Workforce for the completion of **four**

barges in July 2009. (See ECF No. 119-1). Direct Workforce ultimately tried to assert ownership

of the barges and at the same time claim a materialman's lien upon the barges. (See ECF No.

119). The Direct Workforce attempted lien and ownership was unsuccessful.

Mr. Cluck also testified that he and Bob Harris spray painted "GT" on Falcon's Exhibit 7

at the direction of Mr. Williams and that "GT" stood for Global Tooling. (R. 1:36:27-39). He

admitted that this occurred during the first of the year 2011. (R. 1:37:17). Mr. Cluck testified

that he painted "GT" on 42-56 items (R. 1:55:50) and that the items were intended for the interior

construction of the Flowers barges. (R. 1:56:23). Mr. Cluck testified that he got no explanation

from Mr. Williams as to why he was painting "GT" on the steel other than he was to paint the

"work in process". (R. 1:58:10). Mr. Cluck testified that "some of the pieces that were spray

painted were excess"(R. 2:01:33) and some were for F4, F5 and F6. (R. 2:03:08). Mr. Heinz

testified that he did receive a letter from Global Tooling in October 2010 indicating that they had a lien on the "work in progress". (See Falcon Exhibit 6). Mr. Paul Palmer testified that when he was attempting to move the barges and steel from the USMT shipyard to his own shipyard the police showed up with Mr. Harris, an employee of Mr. Williams who presented a bill of sale from Global Tooling and asking the police to prevent the movement of the steel. (R. 3:16:00-43). The police refused to stop the movement of the steel from one yard to the other but did inform Mr. Harris that he was to review the items to determine if anything was "stolen". Mr. Harris and Mr. Palmer reviewed the item and it was determined that nothing inappropriate was taken. (R. 3:16:43-3:18:37).

The crux of this case is that USMT contends that Falcon Steel removed certain steel that was intended for use in the Flowers barges F7 to F10 while Falcon contends that it only removed steel that was listed in the original specification sheet (Falcon Exhibit 2) and that all of the steel removed can be used in the completion of the F4-F6.

The court places great credibility upon the testimony of Mr. Paul Palmer. *See Stevenson v. Union Pac. Ry. Co.*, 354 F.3d 739, 745 (8th Cir.2004) (citation omitted) (stating it is the finder of fact's province to determine the credibility of both lay and expert witnesses). *In re Acceptance Ins. Companies Inc.* 567 F.3d 369, 380 (C.A.8,2009). Mr. Palmer is an independent contractor without any interest in the outcome of the litigation except the completion of his contract. He has disputed Mr. Cluck testimony concerning the number of specific pieces of steel that was taken and specifically testified that all of the item of steel that were taken can be used in the completion of barges F4-F6 and are listed on the specification sheet. (See Falcon Exhibit 2).

Mr. Cluck's testimony that some of the steel on the ground was intended for Flowers

Page -5-

barges F7-F10 is not believable.  USMT has failed to offer any proof which would tie a specific

piece of steel to barges F7-F10 nor has USMT ever asserted previously that any of the steel was

allocated to barges F7-F10. (ECF No. 71).  Mr. Cluck ceased working on the barges over two

years ago, two other shipbuilders had subsequently worked on the barges and it is clear to the

court that USMT cannot account for the steel from any supplier and whether it was specifically

designated for barge F7-F10.  Accounting for a particular piece of steel into a particular project

has proven to be an impossible task and USMT has certainly not met its burden to show that any

of the steel taken by Falcon was not intended to be incorporated into barges F3-F6.

It is clear from the testimony of Mr. Palmer that the material he removed from the USMT

shipyard can be used in the completion of barges F4-F6 and the Motion for Emergency Relief by

USMT is without merit.

## Conclusion:

It is the recommendation that the Motion for Emergency Relief filed by USMT be

**DENIED.**

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of April 2011.

/s/ J. Marschewski
JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

+